PRESENT:  Lemons, Goodwyn, Millette, Mims, and McClanahan, JJ.
and Russell and Lacy, S.JJ.

JUDICIAL INQUIRY AND REVIEW
COMMISSION OF VIRGINIA
                                        OPINION BY
v.  Record No. 120398          JUSTICE DONALD W. LEMONS
                                     NOVEMBER 1, 2012
JACQUELINE R. WAYMACK,
JUDGE OF THE SIXTH JUDICIAL DISTRICT


        The Judicial Inquiry and Review Commission (the

"Commission") filed the present complaint against Jacqueline R.

Waymack, Judge of the Sixth Judicial District, pursuant to the

original jurisdiction of this Court set forth in Article VI,

Section 10 of the Constitution of Virginia and Virginia Code

§ 17.1-902.  The Commission asserted that its charges against

Judge Waymack for allegedly violating the Canons of Judicial

Conduct (the "Canons") are well founded in fact, and that the

violations are of sufficient gravity to constitute the basis for

censure or removal by this Court.  We conclude that there is not

clear and convincing evidence that Judge Waymack engaged in

either "misconduct" or "conduct prejudicial to the proper

administration of justice."  Va. Const. art. VI, § 10.

Therefore, we will dismiss the complaint.

                    I. FACTS AND PROCEEDINGS

    On October 11, 2011, the Commission issued a Notice

establishing formal charges ("Notice") against Judge Waymack

that she had engaged in misconduct or engaged in conduct prejudicial to the proper administration of justice while serving as a judge in the Juvenile and Domestic Relations Court for the Sixth Judicial District (the "J&DR court"). Judge Waymack was charged with alleged violations of Canons 1, 2, 2B, and 5A(3).

A. The Electronic Text Messages

The Commission alleged that on the evening of July 22, 2011, Judge Waymack sent inappropriate electronic text messages from her cellular telephone to an employee of the City of Hopewell District Court's clerk's office. At the time Judge Waymack sent the messages to the court employee, her nephew, Joseph Waymack, was seeking his party's nomination to run for a seat in the House of Delegates. The nominee was to be chosen at a meeting in Windsor, Virginia, on the following day. According to the Commission, Judge Waymack attempted to assist her nephew in obtaining the nomination by sending a text message to the court employee to ascertain whether the court employee's mother would be attending the meeting.

In the messages that Judge Waymack sent to the court employee, she identified herself as "Jackie." Judge Waymack informed the court employee that the employee's mother had "signed up to go to this meeting tomorrow for my nephew Joseph," and then asked, "[i]s your mom still awake? Do you know if

2

she's going or if it's too late for my mom to call her?" When the court employee informed Judge Waymack that her mother was on vacation, Judge Waymack responded, "Serious? Well guess she won't be at the meeting then...Ok. Thanks!"

In Judge Waymack's answer to the Notice of formal charges, she admitted that she sent the referenced message to the court employee, and that when she sent that message her nephew was seeking his party's nomination to run for a seat in the House of Delegates. Judge Waymack denied, however, that the text message violated any Canons. Judge Waymack further denied that her intent in sending the message was to assist her nephew in obtaining the nomination.

## B. The Courtroom Appearance

In June of 2011, the case of Carmella Brenzie v. Mark A. Brenzie was pending in the JD&R court in Hopewell. On June 22, 2011, Mark Brenzie ("Brenzie"), by counsel, filed a motion dated June 9, 2011, requesting that the judges of the juvenile and domestic relations court recuse themselves because it was well known in the general public that Brenzie was in a "close personal relationship with a sitting judge of this Court." That motion was granted, and Retired Judge Jannene L. Shannon was designated by the Chief Justice to hear the case.

On July 27, 2011, Judge Shannon heard the matter of Carmella Brenzie v. Mark A. Brenzie. Judge Waymack accompanied

3

Brenzie into the courthouse and the courtroom, and she sat in a chair at the back of the courtroom. At the beginning of the hearing, counsel for Carmella Brenzie ("Carmella"), Adrienne Eliades ("Eliades"), informed Judge Shannon that a motion to recuse had been filed in this case because it was known that Brenzie was in a relationship with a judge from the jurisdiction. Eliades explained that the judge in question, Judge Waymack, was sitting in the courtroom. Eliades argued that Judge Waymack was the reason for the recusal, so she should not be permitted to be in the courtroom.

Counsel for Brenzie, Stephen Heretick ("Heretick"), responded that Brenzie did not plan on calling Judge Waymack as a witness and that she was present in the courtroom merely as a member of the public. Judge Shannon asked Judge Waymack if she was the judge they were describing. Judge Waymack responded affirmatively. Judge Shannon then stated that she thought "it would be better if you were not in the courtroom." Judge Waymack replied, "All right. Certainly. Certainly." Judge Shannon stated that she thought that would "[p]rotect at least the appearance of propriety, even though there would be no impropriety, per se." Judge Waymack left the courtroom.

In Judge Waymack's answer to the Notice, she admitted that she attended the court hearing with Brenzie, but she denied that doing so violated any applicable Canons. Judge Waymack also

4

alleged that she had previously contacted counsel for the Commission through her counsel and obtained advice that it was permissible for her to be a factual witness in related proceedings, but not a character witness.

## C. Prior Misconduct

In its Notice, the Commission alleged that all of the foregoing conduct occurred after Judge Waymack had been formally charged by the Commission in 2004 with several violations of the Canons, had consented to a written finding that she had violated the Canons, had agreed to a two-year period of supervision, and had completed the supervision period in 2007. Judge Waymack responded in her answer to the Notice that the prior Commission record had no relevance or materiality to any of the issues raised, and that it was inappropriate, prejudicial, and violated due process and equal protection principles to reference, rely upon, or make use of the prior Commission records in the current proceeding. Judge Waymack asked the Commission to refrain from making any further use of this material.

## D. Commission Hearing

On February 14, 2012, the Commission conducted an evidentiary hearing on the charges, at which time Judge Waymack was present and represented by counsel. Judge Waymack filed three motions prior to the evidentiary hearing; a motion to dismiss and motion to strike, a "motion to exclude and strike

5

evidence and allegations that are irrelevant, immaterial and/or more prejudicial than probative," and a supplemental motion to exclude any evidence or areas of inquiry outside the scope of issues raised in the Notice. The Commission heard argument on these motions and subsequently denied them.

Judge Waymack testified at the hearing that she sent the text messages to the court employee, Lindsay Reid ("Reid"), to get Reid's mother's phone number. Judge Waymack testified that she had known Reid for many years, and they were on a "first name basis" outside of the courtroom. Judge Waymack testified that her mother was trying to see if people needed a ride to the meeting the next day, and her mother did not have a phone number for Reid's mother. Judge Waymack stated that she had never discussed her nephew's campaign with Reid.

Regarding the courtroom appearance, Judge Waymack testified that she went to the courthouse with Brenzie because he was "very very upset." She stated that she went into the courtroom to observe and sat in the back. When Judge Shannon said it might be best if she left the courtroom, she agreed to do so and left. Judge Waymack testified that because she had been informed that it would be permissible for her to testify as a fact witness, she believed she could come inside the courtroom and sit silently in the back as an observer. Judge Waymack testified that if she thought that anyone would be intimidated

6

by her presence in the courtroom, she would not have gone in. She stated that she attended the proceeding out of concern for her friend and to observe on his behalf.

Carmela testified that when she saw Judge Waymack come into the courtroom during the July 27, 2011 hearing, she was very upset, and that having Judge Waymack in the courtroom made her want "to vomit." Heretick testified that before the July 27, 2011 hearing, he met briefly with Eliades. At the conclusion of that meeting, Eliades asked if Judge Waymack was going into the courtroom, and said she would have a problem with Judge Waymack being present in the courtroom. Heretick responded that he did not know if Judge Waymack planned on going into the courtroom, but that he believed she was entitled to attend as a public citizen, and that she was just there for moral support. Heretick did not have an opportunity to tell Judge Waymack about Eliades' concerns, because when he left his meeting with Eliades, Judge Waymack was already in the courtroom and Judge Shannon was on the bench.

After the hearing, the Commission determined that Judge Waymack violated Canons 1, 2, 2B, and 5A(3) and "that the charges as stated in the Notice are well founded and of sufficient gravity to constitute the basis for retirement, censure or removal." The Commission then directed its counsel

7

to file a complaint against Judge Waymack in this Court with a recommendation of censure.

On March 12, 2012, the Commission filed its complaint with this Court. In her answer to the Commission's complaint, Judge Waymack alleged that the evidence in the record was insufficient to establish any violations of the Canons. In addition, Judge Waymack alleged that the Notice issued against her failed to articulate any violations of the Canons, and that therefore there was no basis for conducting a hearing at the Commission level. Finally, Judge Waymack asserted that there was an insufficient basis for any form of discipline based upon the allegations, and she asked the Court to resolve all issues in her favor and to dismiss the Complaint.

On March 28, 2012, Judge Waymack filed a demurrer and motion to dismiss. Judge Waymack asked the Court to conduct an initial review of the Commission's complaint, make a determination whether the Complaint was sufficient to justify any further proceedings, and dismiss the matter with prejudice. The Commission filed an opposing response, and argued that once it files a complaint in this Court, this Court must conduct a hearing in open court, and that a demurrer or motion to dismiss had no application in this type of proceeding. We issued an order denying the demurrer and motion to dismiss.

## II. CANONS

The relevant portions of the Canons at issue in this case state the following:

Canon 1:

A Judge Should Uphold the Integrity and Independence of the Judiciary.

Canon 2:

A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities.

. . . .

B. A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify as a character witness.

Canon 5:

A.(3) A judge shall not engage in any other political activity except in behalf of measures to improve the law, the legal system, or the administration of justice.

Va. Sup. Ct. R., Part 6, § III, Canons 1, 2 and 5.

## III. ANALYSIS

The filing of a formal complaint by the Commission triggered this Court's duty to conduct a hearing in open court to determine whether Judge Waymack "engaged in misconduct while

9

in office, or . . . has engaged in conduct prejudicial to the

proper administration of justice."  Va. Const. art. VI, § 10.

> In conducting the hearing on the formal complaint
> filed by the Commission, this Court considers the
> evidence and makes factual determinations de
> novo.  The Commission must prove its charges in
> this Court by clear and convincing evidence.  The
> term "clear and convincing evidence" has been
> defined as "that measure or degree of proof which
> will produce in the mind of the trier of facts a
> firm belief or conviction as to the allegations
> sought to be established.  It is intermediate,
> being more than a mere preponderance, but not to
> the extent of such certainty as is required
> beyond a reasonable doubt in criminal cases.  It
> does not mean clear and unequivocal."

Judicial Inquiry & Review Comm'n v. Lewis, 264 Va. 401, 405, 568

S.E.2d 687, 689 (2002) (citations omitted).  This Court does not

accord any particular weight or deference to factual

determinations, findings and opinions of the Commission.  See

Judicial Inquiry & Review Comm'n v. Peatross, 269 Va. 428, 444,

611 S.E.2d 392, 400 (2005).  After conducting an independent

review of the record and hearing argument of counsel, we must

decide whether there is clear and convincing evidence of a

violation of the Canons as charged in the Commission's

complaint.  Id.  If we find such clear and convincing evidence,

we are required to censure or remove the judge from office.  Va.

Const. art. VI, § 10.

## A. The Electronic Text Messages

Judge Waymack has admitted sending the electronic text messages in question. The only issue before us is whether the sending of these messages constitutes a violation of the Canons. Judge Waymack testified that when she sent the text messages, she was merely attempting to get the phone number of Reid's mother and to ascertain whether it was too late for Judge Waymack's mother to telephone Reid's mother. We conclude that there was nothing in the actual language of the text messages that was overtly political. There is also no evidence in the record that Reid, when she received these messages, understood them as being political in nature. We conclude that Judge Waymack was not using the "prestige of judicial office"; she merely asked a friend for a telephone number. Therefore, we conclude that there is not clear and convincing evidence that this conduct violated any of the Canons.

## B. The Courtroom Appearance

Judge Waymack does not deny that she attended the Brenzie hearing on July 27, 2011. There is no dispute that Judge Waymack and the chief judge of the district were both recused from the matter because of Judge Waymack's close personal relationship with Brenzie. The Commission asserts that by attending this hearing, Judge Waymack conveyed the impression that she was not impartial with respect to the case or the

11

parties, and that she was lending the prestige of judicial office to Brenzie's interests.

In support of its argument, the Commission cites to cases from New Jersey, California, and New York where judges were disciplined for attending court proceedings as observers. In the case of In re: Perskie, 24 A.3d 277 (N.J. 2011), the judge was charged with, among other things, failing to recuse himself when initially requested despite having a professional and social relationship with a central witness in the case, and appearing in the courtroom during the trial from which he had finally recused himself. The judge appeared twice in the courtroom during trial and remained for an hour on each occasion, speaking with one of the plaintiff's attorneys during one of those occasions. Id. at 283-84. In Broadman v. Comm'n on Judicial Performance, 959 P.2d 715 (Cal. 1998), the judge attended the malpractice trial of an attorney with whom he had an antagonistic relationship. When a court employee asked the judge why he had come to the trial, the judge replied that he was "just being an asshole." Id. at 730. Several jurors knew the judge and noted and discussed his presence in the courtroom. Id.

The Commission also cites In re: Thwaits, 2003 Ann. Rep. 171, 171-72, (N.Y. Comm'n on Judicial Conduct, Dec. 30, 2002).[*] In that case, a judge recused herself from a case because of her relationship to the defendant but then attended the trial and sat in the courtroom near members of the defendant's family. This judge, however, was not censured merely for attending the family member's trial. Other egregious conduct was involved. The judge reduced that same defendant's bail and modified the protective order against him before recusing herself. Additionally, in two other cases, one involving a family member and one involving a social acquaintance, the judge granted "adjournment in contemplation of dismissal" without consent or notice to the prosecution as required by law. In yet another case, she dismissed charges against a family member and did not disclose to the prosecution her familial relationship to that defendant. Id.

The Commission asserts that facts surrounding Judge Waymack's presence at the Brenzie hearing are comparable to the facts articulated in the cases above. We disagree. The facts in the cases discussed above are more troubling than the facts before us in this case. Here, Judge Waymack attended the

---

[*] The opinion is a part of the 2003 Annual Report of the New York State Commission on Judicial Conduct. See http://www.cjc.ny.gov/Publications/AnnualReports/nyscjc.2003annualreport.pdf (last visited Sept. 19, 2012).

hearing with her friend to observe as a member of the public. She sat in the back of the courtroom. Until it was called to her attention, presiding Judge Shannon did not know who Judge Waymack was. As soon as Judge Shannon asked her to leave, Judge Waymack did so. Although Judge Waymack's decision to attend this hearing did not "exemplify the level of professionalism that judges in this Commonwealth should exhibit," we cannot say that Judge Waymack's actions and conduct violated the Canons, nor were they so egregious as to amount to judicial misconduct or conduct that was prejudicial to the proper administration of justice. See Peatross, 269 Va. at 449-50, 611 S.E.2d at 404.

## C. Prior Misconduct

Having determined that there is insufficient evidence of a violation of any of the Canons, we do not need to consider Judge Waymack's argument regarding prior history with the Commission.

## IV. CONCLUSION

For these reasons, we hold that there is not clear and convincing evidence showing that Judge Waymack violated the specified Canons as charged. Judge Waymack's actions were not so egregious as to amount to judicial misconduct or conduct that was prejudicial to the proper administration of justice warranting censure or removal from office. Therefore, we will dismiss the complaint.

Dismissed.

14